Filed 8/25/23  In re D.S. CA4/2
See Concurring Opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.S. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.J.,<br><br>    Defendant and Appellant. | E080751<br><br>(Super.Ct.No. DPIN2200005)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Susanne S. Cho, Judge. Affirmed with directions.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel and Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

Mother appeals from a judgment declaring her four children to be dependents under Welfare and Institutions Code,[1] section 300, subdivisions (a) and (b). She does not challenge the declaration of dependency or the removal of the children from her custody, rather, she challenges only the determination that the Indian Child Welfare Act (ICWA) does not apply because neither the court nor the Riverside County Department of Public Social Services (DPSS or Department) inquired of extended relatives, who were readily available, about possible Indian heritage.

We affirm with directions.

## BACKGROUND

Because mother does not challenge the bases for jurisdiction over or removal of her children, we do not need a detailed recounting of the matters that led to intervention by DPSS.

Mother, S.J., has four children, three of them by father J.S. (sons D.S., R.S., and A.S.) and one child by father D.R. (daughter A.R.). On June 24, 2022, DPSS received a referral alleging general neglect, physical abuse and emotional abuse, because mother cut off all of her family and she moved her boyfriend, a homeless drug addict and musician who takes all of her money, into her home in March 2022. The children appeared malnourished and two of the boys bore marks suggesting physical abuse. Neither father intervened on behalf of their children, who were afraid to return to their mother's home

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

because of her boyfriend. Mother refused to provide contact information for either of the fathers, including the identities or contact information for relatives.

Mother admitted frequent use of marijuana and tested positive for marijuana and amphetamines following a saliva test. DPSS determined it was necessary to detain the children, for which it sought protective warrants for removal of the children. A dependency petition was filed respecting each of the children, alleging they were persons described by section 300, subdivisions (a) (R.S., A.S.), (b)(1) (all children), (g) (A.R.) and (j) (D.S., A.R.).

On July 7, 2022, at the detention hearing, the mother and father J.S. denied the allegations of the petition and both mother and father J.S. submitted ICWA-020 forms, indicating no Indian heritage. Father J.S. submitted a JV-505 form indicating he had established parentage over his three children and he requested presumed father designation. The court ordered the children detained from the custody of all parents and recalled the protective custody warrants. On July 9, 2022, the children were placed with a maternal great-aunt and great-uncle in Imperial County.

On August 9, 2022, the petition was amended to strike out some language from the section 300, subdivision (a) allegation, and the department dismissed the allegation under section 300, subdivision (g). Further, it corrected the spelling of father D.R.'s name. On August 15, 2022, father D.R. submitted a JV-505 form regarding parentage of A.R., but while the form was filed, it was not executed by D.R. D.R. was found to be the presumed father of A.R. and was ordered to submit a hair follicle sample for drug testing.

3

The jurisdiction/disposition report was submitted on September 15, 2022. In the report, the social worker noted that on August 5, 2022, all three parents denied any Indian heritage or tribal affiliation. An addendum report was filed on November 22, 2022, indicating that mother's boyfriend, M.R., had no criminal records indicating gang membership. Mother indicated she was no longer in a relationship with her boyfriend, but she continued to refuse to sign releases for information, or to drug test for the department. Mother explained her reason for the refusal to test was because the department "dirtied" her initial drug tests; her privately obtained drug tests were negative for everything except marijuana. Based on the results of the private testing, mother asserted she did not need a substance abuse program and refused to enroll in one.

In a subsequent addendum report, the social worker indicated mother called incessantly (19 times on one day) to complain that the social worker's reports falsely claimed she did not bring food for the children at visits. She also complained that the department dirtied her drug tests. The social worker confirmed with one visitation supervisor that mother had brought food for the children, but that supervisor only observed visits on two days out of the week. Another supervisor indicated mother did not bring food for the children, although she brought food for herself, claiming the children had eaten before the visit.

The jurisdiction hearing commenced on January 3, 2023, but was not completed until January 6, 2023, because mother's counsel had not received copies of the reports of the forensic child abuse evaluations of the children. At the hearing, no testimony was

4

offered although mother "vehemently denied" the allegations. However, counsel's statement of mother's position included an admission that she used corporal punishment on the children and left them alone on one occasion with her violent boyfriend (referred to as "Wiz" by mother's counsel) when she went to test for the department. She maintained that the first drug test for the department (showing a positive result for amphetamines) was fabricated and inaccurate. The privately obtained test, which yielded negative results, was done within 24 hours of the department's test. She admitted to using marijuana for pain management.

The court made true findings under section 300, subdivisions (a) (allegations a-1, a-2, a-3) and (b)(1) (allegations b-1 through 5-5, b-10, b-12 and b-14). The children were declared dependents and custody was removed from all parents. The court found that DPSS had conducted a sufficient inquiry and that ICWA did not apply. Family reunification services were ordered for mother, who was ordered to participate.

On February 23, 2023, mother appealed.

## DISCUSSION

Mother's sole argument on appeal is that the court erroneously found that ICWA did not apply where DPSS failed to conduct an adequate inquiry into possible Indian heritage. The record shows that at the inception of the case, the social worker inquired of all three parents if there was Indian ancestry, and that at the initial hearing attended by mother and the two fathers, the court inquired of the parents. Because no inquiry was

5

made of any relatives, mother argues the judgment should be either reversed or conditionally affirmed.

DPSS, which acknowledges that no inquiry was made of relatives, argues the appeal should be dismissed because the issue is premature, and that there was and is no duty to inquire of relatives because the children were detained by means of protective custody warrants, for which reason the inquiry provisions of section 224.2, subdivision (b) were not triggered. The Department relies upon the recent case out of our division, *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*). We disagree with that approach and conclude the duty of inquiry begins when the children are received by DPSS, by whatever means, following temporary removal from parental custody. However, reversal is not required because the case is ongoing and any failure to inquire can be corrected over the rest of the proceedings.

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child," the Indian custodian and the Indian child's tribe have the right to intervene and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C., §§ 1911, subd. (c), 1914; see § 224, subd. (e)).

6

Under California law, the juvenile courts and the child protective agencies, "(but not parents)[, have] an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 741-742, quoting § 224.2, subd. (a).) "That duty to inquire begins with [the] initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290, citing § 224.2, subds. (a)-(c).) Section 224.2, subdivision (a), expressly states the duty to inquire is *not limited* to asking the reporting party if they have information that the child may be an Indian child. Section 224.2, subdivision (b), requires the department to ask extended relatives where the "child is placed into the temporary custody of a county welfare department pursuant to Section 306."

Section 306, subdivision (b), requires departmental inquiry into Indian heritage pursuant to section 224.2, "[u]pon receiving temporary custody of a child." "Under both ICWA and California law, "'extended family member[s]'" include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" [Citations.]" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; see also, *In re Dominick D*. (2022) 82 Cal.App.5th 560, 567.) Upon each party's first appearance in a dependency proceeding, the juvenile court must ask each participant "whether the participant knows or has reason to know that the child

is an Indian child" (§ 224.2, subd. (c)), and "[o]rder the parent . . . to complete [an ICWA-020 form]." (Cal. Rules of Court, rule 5.481(a)(2)(C).)

"The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) The initial contact refers to the first face-to-face contact between DPSS and the family following a referral to investigate for child abuse or neglect.

Removal of a child from his parents is the true triggering event, because ICWA is not involved in juvenile dependency proceedings where a child remains placed with his parent or parents. The language of ICWA specifically states that it applies when a child is placed in foster care or an adoptive placement: "The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards *for the removal of Indian children from their families and the placement of such children in foster or adoptive homes* which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs. (25 U.S.C. § 1902, italics added.)

Not every child is removed at the time of "initial contact" by the Department. Any peace officer may take a child or children into temporary custody without a warrant, based on probable cause to believe the child is a person coming under the definition of a dependent child, or when the child is in apparent need of protection from harm. (See § 305.) Once taken into temporary custody, the peace officer must try to contact the parent or guardian, and, if the parent or guardian cannot be contacted, the peace officer shall notify a social worker in the county welfare department to assume custody of the child. (§ 305, subd. (a).) When delivered to the social services agency, a social worker must receive and maintain, pending investigation, temporary custody of a child who is described in section 300, and who has been delivered by a peace officer. (§ 306, subd. (a).)

An initial contact may also occur when the social services agency receives a referral for suspected abuse or neglect, investigates the referral and determines that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety. In such situations, a social worker may take the child into custody and detain him or her. (§ 306, subd. (a)(2).)

A child may also be taken into temporary custody by means of a protective custody warrant, where there is no emergency situation requiring immediate removal. (§ 340.) In any of these situations, the child is "received" by the agency, and "[u]pon

9

receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child." (§ 306, subd. (b).)

Some recent published decisions have concluded that the duty of inquiry of extended relatives is limited to situations in which the social services agency takes the child into custody without a warrant. (See *Robert F., supra,* 90 Cal.App.5th 492, relying upon *In re Adrian L.* (2022) 86 Cal.App.5th 342, 364 [conc. opn. of Kelley, J.]; see also *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-678.) However, in each case, the decision misinterprets the language of section 224.2, subdivision (b), without considering section 306 in its entirety. The reference to section 306 in section 224.2, subdivision (b), which is generic, does not limit the duty of inquiry to any specific subdivision of section 306. Instead, section 306, subdivision (b), provides, without limitation "Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."

Yet *Robert F.*, on which *In re Ja.O.* relies, incorrectly states that "Section 306 authorizes county welfare departments to take children into temporary custody 'without a warrant' in certain circumstances. (§ 306, subd. (a)(2).)" (*Robert F., supra,* 90 Cal.App.5th at p. 497.) The decision then goes on to hold that the duty to inquire of extended family is limited to children received by the department in that circumstance.

Instead, what is misconstrued as limiting language found in section 306, subdivision (a)(2), is simply a description of one of the various means in which the department assumes responsibility to temporarily place and care for a child who is

10

removed from his or her parents.  The Legislature simply described situations in which a social worker, responding to an emergency referral, initiates a contact and determines that immediate removal of a child is necessary, from situations in which a peace officer delivers a child to the Department.  Reading the entire statute, it broadly describes the social services agency's authority to receive and maintain a child in temporary custody, and its duty to inquire about possible Indian heritage.

By relying on the language of a single subsection of section 306, that is, subdivision (a)(2), to reach their conclusions, the conclusions of *Robert F.* and *Ja.O.* ignore the rest of section 306.  Yet section 224.2, subdivision (b) refers generally to section 306.  There is no language limiting the application of section 224.2 to situations arising under section 306, subdivision (a)(2), as the cases suggest.

Our position is buttressed by the fact that the duty of inquiry imposed by section 224.2 is also applicable to non-dependency cases in which a possible Indian child may be the subject of a guardianship or specified conservatorship proceeding under the Probate Code; in such cases, inquiry as to Indian heritage is required and notice must be given as prescribed in rule 7.1015 (c) [inquiry duty], (e) [notice to tribes]. .  (Cal. Rules of Ct., rule 7.51(f); see also rules 7.1003, 7.1015, relating to guardianship and certain conservatorship proceedings involving Indian children.)

Specifically, Rule 7.1015 (d) provides:  "(1) The court, the court investigator or county officer appointed to conduct an investigation under Probate Code section 1513 or 1826, a petitioner, and an appointed temporary or general guardian or conservator of the

11

person of a minor child each have an affirmative and continuing duty to inquire whether each child who is the subject of a proceeding identified in (b)(1) is or may be an Indian child." (Cal Rules of Court, rule 7.1015(d).) If the Department's position were followed, there would be no ICWA inquiry except where a social worker makes an emergency removal of children without a warrant. This theory is not tenable.

Section 306, subdivision (a) covers situations in which the social worker receives a child pending investigation, who was delivered by a peace officer. (§ 306, subd. (a)(1).) Children removed pursuant to a warrant are similarly "received" by the Department when a peace officer executes a protective custody warrant and delivers a child to the Department. (§ 340, subd. (c).) In other words, use of language in section 306 referring to the department's receipt of a child into its temporary care indicates a legislative intent not to exclude or limit the application of section 306 to any single type of situation. When a child is received by the agency, the duty of inquiry is triggered.

Because the duty to inquire of extended relatives pursuant to section 224.2, subdivision (b), applies to children who are received by the Department by the means described in section 306, that condition is met when a child is picked up by peace officers pursuant to a protective custody warrant and is "delivered" to the Department, which then "receives" the child pursuant to section 306, subdivision (a)(1).)

The express language of section 306, subdivision (a)(1), covers situations in which the Department "receives" a child who is delivered by a peace officer upon the execution of a protective custody warrant that was issued pursuant to section 340, and does not

12

exclude children taken into custody pursuant to a protective custody warrant. Therefore, children detained upon the execution of a protective custody warrant are delivered to the social worker within the meaning of section 306, subdivision (a)(1), whereupon the duty of inquiry into Indian ancestry is triggered. Similarly, when the Department is appointed to conduct an investigation in a Probate Code guardianship or certain conservatorship proceedings, the same duty of inquiry into the child's possible Indian heritage is required. (Cal.Rules of Ct., rule 7.1015(c)(1).)

In our view, section 306, subdivision (a)(2), authorizing a social worker to immediately "take into and maintain temporary custody of, without a warrant" is intended to serve the obvious purpose of permitting the social worker to act quickly in the face of exigent circumstances, without the necessity of seeking a pre-petition warrant or waiting until the initial hearing on the petition, where an emergency is present. Nothing in the statute reflects that the Legislature intended to limit the duty of inquiry to such situations. Indeed, such an interpretation would directly contravene the express provisions of ICWA itself, which applies to any removal of an Indian child from the custody of a parent, where the child will be placed in foster or adoptive placement.

It is the delivery of the child to the Department that triggers section 306, subdivisions (a)(1) and (b), which, in turn, trigger the duty of inquiry pursuant to section 224.2, subdivision (b). Thus, the fact the child was detained upon a warrant does not give rise to a lesser duty of inquiry into Indian ancestry. We therefore adopt the reasoning of *In re Delila B.* (2023) 93 Cal.App.5th 953, where another panel of this court determined

that the duty of inquiry of extended relatives is triggered whenever the social services agency receives a child and maintains temporary custody.

The Department's interpretation of section 224.2, subdivision (b), as followed in the recent case of *Robert F., supra,* would frustrate the legislative intent, which is to insure a continuing, full, and complete inquiry respecting possible Native American heritage of children removed from parents' custody, contrary to the Department's suggestion.

The procedural posture of this case is young and there is time remaining for the Department to complete its inquiry.  The child is in a relative home, and the Department appears to have contact information for relatives.

**DISPOSITION**

The judgment is affirmed.  DPSS is directed to continue its duty of inquiry in compliance with section 224.2.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


I concur:

RAPHAEL
J.

14

[*In re D.S.*, E080751]

FIELDS, J., Concurring.

I fully concur in the majority's determination to affirm the decision of the juvenile court. However, I respectfully disagree with their determination adopting the reasoning and holding of this court's decision in *In re Delilah D.* (2023) 93 Cal.App.5th 953, regarding the scope of the ICWA inquiry required in this case. I continue to agree with and follow this court's decisions on the ICWA inquiry question in *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743, and *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572.

FIELDS             
                                      J.